(123 N. W. 884.)

---

CITY OF GRAND FORKS v. B. O. PAULSNESS.

Opinion filed December 2, 1909.

**Municipal Corporations — Streets — Injuries — Indemnity by Wrongdoer.**

1. A party who for his own benefit or convenience, or under license from a city of this state, places upon a public thoroughfare a structure, which from its nature or from a failure to properly guard it or keep it in repair, is or may become dangerous, is under an implied contract with the city that while such structure is main-

tained upon the street he will exercise ordinary care to protect the public from danger and the city from loss; and in case of injury to one using the street by reason of such structure or the manner in which it is kept, the party who thus rendered the street unsafe will be regarded as the real wrongdoer, and if the city sustains loss through payment of damages to the person injured, he will be held to be an indemnitor of the city.

### Municipal Corporations — Conclusiveness of Judgment Against Indemnitee.

2. In a case where a city, having paid a judgment obtained by a person injured upon its streets in an action predicated upon an alleged failure of the city to keep its streets in safe condition, brings suit against the party who under license express or implied from the city placed on the street the structure or obstruction by which the injury was caused, the defendant, if he has been given reasonable notice and opportunity to defend upon the trial of the original action is concluded as to all matters of fact necessary to establish a liability from the city to the person injured, and as to any matter which might have been urged as a defense by the city against such liability. Unless, however, it appears that evidence showing the liability of the alleged indemnitor was necessarily involved in the determination of the original action and passed upon by the trial court in rendering judgment, the defendant is not concluded upon the point that notwithstanding the liability of the city he was not at fault and has not failed in any duty which he owed to the city or to the person injured, and may plead and show such facts as a defense upon the trial.

### Same — Street Obstruction by Private Parties — Extent of Liability.

3. A person placing a structure upon a street for his own benefit or convenience, under his implied contract with the city to protect the public from danger and the city from loss, is required to maintain such structure in safe condition, and to supervise the same for the purpose of keeping it in repair and free from any changes or additions which he in the exercise of reasonable care has cause to anticipate will be made or placed there. Such supervision does not, however, extend to changes or additions which the original structure from its nature or the manner of its construction does not invite or induce or which were not' within the reasonable contemplation of the party at the time he placed it there.

### Negligence — Proximate Cause — Question for Court.

4. In an action in negligence the question whether the alleged fault of the defendant, or failure on his part to perform a legal duty, was the proximate cause of the injury, is one of law for the court, to be determined upon the material facts presented, with such inferences as may be properly drawn therefrom.

Same — Street Obstruction — Indemnity — Proximate Cause.

5. In the state of fact assumed to exist, a party under license from a city placed upon a principal street a one-inch water pipe and fastened down to the pavement on either side of it a two-inch plank for the purpose of protecting the pipe from injury and from being shifted from its place upon the street. Afterward, without his knowledge, by some unknown agency and for a purpose that is not shown, manure was placed upon the pipe and upon the planks placed to guard it, and a third plank was placed on top of the manure. This third plank was not attached either to the pavement of the street or to the planks placed to guard the water pipe, but was loose and movable. It was so placed upon the manure that pedestrians stepping on one end at times caused the other end to be raised a distance of from five to ten inches from the street. While in this position a person using the street, in stepping over the loose plank caught his foot upon it and was thrown violently upon the pavement, sustaining injuries for which he brought an action in damages against the city and recovered a judgment which the city paid. The city then proceeded against the party placing the water pipe and the planks guarding it on the street, as an indemnitor, alleging that the accident resulted from a failure on his part to keep safe the structure so placed by him.

*Held,* that the party placing the water pipe and the two planks to guard it could not be said, in the exercise of ordinary care, to have in contemplation that some other person would change and add to the structure placed and maintained by him by putting manure on top of it and placing a loose plank on top of the manure that would rise to such height from the street when stepped upon as to cause an accident such as this, and that the accident did not result proximately from the act of defendant in placing the original structure or the failure to perform any duty imposed upon him thereby to keep the street safe.

Appeal from District Court, Grand Forks county; *Templeton,* J.

Action by the City of Grand Forks against B. O. Paulsness. Judgment for plaintiff, and defendant appeals.

Reversed and dismissed.

*George A. Bangs,* for appellant.

Although notified to defend the suit against the city, indemnitor in an action against him, may show his non-liability. 2 Dillon on Mun. Corp. (4th Ed.) section 1035; 5 Thompson on Neg., section 6362; Robbins v. Chicago, 4 Wallace, 657; City v. Worthington, 10 Gray, 496; Faith v Atlanta, 78 Ga. 779, 4 S. E. 3; City v. Detroit L. & N. R. Co., 89 N. W. 54; Rochester v. Montgomery, 72 N. Y. 65.

Where the city's officers direct the indemnitor's men in placing the obstructions in the street, indemnitor is not liable. 1 Cooley on

Torts, page 254; Buffalo v. Holloway, 7 N. Y. 493; Silver v. Nerdlinger, 30 Ind. 53; Fulton v. Tucker, 3 Hun. 529; Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937; Moore v. Gadsden, 93 N. Y. 12.

Where the indemnitor placed obstructions in the streets whether such act was negligent or not, if a third party added thereto something that directly caused the injury, the former is not liable. Sherman and Redfield on Neg. (5th Ed.) section 25; Leeds v. New York Telephone Co., 178 N. Y. 118, 70 N. E. 219; In re Mich., 133 Fed. 577; Kumba v. Gilham, 103 Wis. 312, 79 N. W. 325; Kinsel v. Andrews, 114 Ga. 390, 40 S. E. 300; Fowles v. Briggs, 74 N. W. 1046; Claypool v. Wigmore, 34 Ind. App. 35; M. P. R. Co. v. Columbia, 65 Kan. 390, 69 Pac. 338; Marsh v. Giles, 60 Atl. 315; Co. v. Hodges, 70 S. W. 616, 97 A. S. R. 844; Winfree v. Jones, 104 Va. 39, 51 S. E. 153; Land v. So. Ry., 45 S. E. 203; Saxton v. Co., 98 Mo. App. 494, 72 S. W. 717; Daniels v. New York, N. H. & H. R. Co., 183 Mass. 393, 67 N. E. 424; McGahan v. Indianapolis Natural Gas Co., 140 Ind. 335, 37 N. E. 601, 29 L. R. A. 355, 49 A. S. R. 199; Co. v. Admr., 80 S. W. 782; T. & P. R. Co. v. Kelly, 78 S. W. 372; Watters y. Waterloo, 126 Iowa, 199, 101 N. W. 871.

*Frank B. Feetham,* for respondent.

Where indemnitor is called upon to defend the action against the city, he is bound by the result therein. Robbins v. Chicago, 18 L. Ed. (U. S.) 427; Lovejoy v. Murray, 18 L. Ed (U. S.) 129.

One who by license, express or implied, from a city, obstructs its streets, is yet bound to prevent injuries to the users of such street. 15 Am. & Eng. Enc. Law, 435; Village of Seneca Falls v. Zalinski, 15 Hun. 573; Village of Port Jarvis v. First National Bank, 96 N. Y. 550; Mairs v. Manhattan Real Estate Association, 89 N. Y. 503; Nelson v. Godfrey, 12 Ill. 23; Sexton v. Zett, 44 N. Y. 430; Creed v. Hartmann, 29 N. Y. 591.

If the original obstruction was safe, and was rendered unsafe by a third person, nevertheless indemnitor who was bound to keep such obstruction safe, is liable for the indemnification of the city. Washington Gas Light Co. v. District of Columbia, 16 L. Ed. 564; 16 Sup. Ct. Rep. 564; Chicago v. Robbins, 4 Wallace (U. S.) 657.

ELLSWORTH, J. The state of fact out of which the cause of action involved in this appeal arises may be stated as follows:

In the months of November and December, 1904, the city of Grand Forks owned and operated a public waterworks plant, and one of the mains thereof extended along De Mers avenue, one of the principal streets of the city, to a point thirty feet or more from the west end of a bridge crossing the Red River of the North to the city of East Grand Forks located on the eastern bank. At this point there was connected with the water main a two-inch pipe intended to provide water service to consumers in East Grand Forks, which pipe, from its junction with the main, extended underground below the western approach to the bridge, and thence to the eastern bank beneath the bed of the river. That part of the west bank of the river under which this service pipe extended was composed of soil, a peculiar quality of which caused it to be constantly sliding or moving toward the bed of the river, and as a result there were frequent breaks in that portion of the pipe which passed beneath it. Such a break occurred during the month of November, 1904, and was the cause of a considerable wastage of water passing through the pipe. The defendant, Paulsness, who was a plumber, holding a license from the city of Grand Forks for that purpose, was notified of this break in the pipe and authorized to take steps for its repair. In order that he might do this, it was necessary to either entirely shut off the water beyond the end of the main in De Mers avenue near the west end of the bridge or to provide other means of conveying it from that point to a point beyond the break in the service pipe to East Grand Forks. This connection was finally made by inserting into the main under the western approach to the bridge a one-inch pipe, leading this pipe up through a manhole in De Mers avenue above the end of the main, and thence over the surface of the street to the side where it passed down the river bank and connected with the service pipe at a point east of where the break had occurred. Employes of Paulsness, under the direction of the superintendent of the waterworks of the city of Grand Forks, placed this pipe upon the surface of the street in the manner described and in order to protect it from injury and from being shifted from side to side by the passing of loaded wagons, placed on either side of it a two-inch plank, which planks were securely spiked down to the cedar block pavement of the street. After that time, at a date which is not shown by the record, some person or persons whose identity and purpose are not disclosed, placed some manure

over the planks and the pipe, filling the crevice between and the space at the side, and covering partially the top of the planks. There was also placed above the water pipe upon the manure, at a date that the record shows obscurely, except that it was probably four or five days prior to December 17, 1904, a plank which was not attached either to the other planks already there or to the cedar block pavement of the street. Neither the manure nor the loose plank was a part of the original pipe guard placed there by the defendant, Paulsness. He did not know of the presence of the loose or "fugitive" plank, and it seems to be conceded that there was no useful purpose in connection with the pipe guard that was or could be served by this plank. The footway upon the bridge from Grand Forks to East Grand Forks did not at this time align with the sidewalk on the north side of De Mers avenue, and it was necessary for pedestrians passing from the bridge to this sidewalk to walk over the pavement of the street for a short distance from the west end of the bridge, and to pass across the pipe that in December, 1904, lay on the surface of the street at this point. On the evening of December 17, 1904, one Allman came over the bridge from East Grand Forks and was proceeding over the paved street at its west end to the sidewalk on the north side of De Mers avenue. At that time the pipe extended from the manhole over the surface of the street, across the footway, the two two-inch planks were fastened down on either side of it, the manure was spread over the top of the planks and the loose or "fugitive" plank was lying on top of the manure. As Allman attempted to step over the loose plank, it was raised five or ten inches from the ground by other pedestrians stepping upon the other end of it, and he caught his foot under the plank and was thrown violently upon the pavement, receiving serious injuries. He presented a claim for damages to the city council of Grand Forks alleging that his injuries had resulted from the negligence of the city in providing for the safety of its streets, and his claims being refused, brought action in the circuit court of the United States for the District of North Dakota, against the city of Grand Forks, based upon this claim. On November 13, 1905, one day before the opening of the term of the circuit court of the United States, at which the case brought by Allman would be tried, the city attorney of Grand Forks prepared and served upon the defendant, Paulsness, a notice to which was attached a copy of

the complaint and the answer of the city, in which it was stated, among other things, that "the condition complained of is attributable to and was created by you and your servants and you are hereby notified that the City of Grand Forks holds you responsible therefor, and to indemnify the city of Grand Forks from any and all damages, detriment, costs or expenses it has been or will be put to by reason of said litigation."

On November 23, 1905, the case came on to trial in the circuit court of the United States before a jury, and evidence was introduced both on behalf of the plaintiff, Allman, and of the defendant, city of Grand Forks. The facts shown by the evidence taken are substantially as hereinbefore narrated. The defendant, Paulsness, was a witness; but neither from his own testimony, nor from that of any of the witnesses examined upon the trial does it appear that he placed or was responsible for the placing of the loose plank by which Allman was injured, upon the street, or that he knew it was there adjacent to the planks fastened to the pavement as a guard to the water pipe. The court, at the close of the trial, instructed the jury in substance that whether or not the city of Grand Forks placed or authorized the placing of the loose or fugitive plank upon the street, if it appeared that the plank had been there and its presence rendered the street at that point unsafe, for such period of time that the city by the exercise of reasonable care in the supervision of its streets would have known of it and did not remove it, the city was liable for such damage as plaintiff had sustained. The court submitted to the jury four special findings, which with the answers thereto returned by the jury, are as follows: "(1) How many planks were used in the structure in question when it was put down on November 24, 1904? Ans. Two. (2) Were such planks spiked down to the pavement? Ans. Spiked down. (3) Was the plank which tripped the plaintiff one that was laid November 24, 1904, or one that was subsequently laid? Ans. Subsequent. (4) If you find in answer to question 3 that the plank which tripped plaintiff was placed subsequently to November 24, 1904, for what time previous to the accident had it been continuously at the point of the accident? Ans. We don't know." The jury also returned a general verdict in favor of the plaintiff for $850, for which sum, together with the costs of the action, a judgment was thereupon rendered and entered in Allman's favor. An appeal from this judgment was tak-

en by the city of Grand Forks to the United States circuit
court of appeals for the eighth circuit, which on April 27,1907, af-
firmed the judgment of the circuit court. City of Grand Forks v.
Allman, 153 Fed. 532, 83 C. C. A. 554. Thereafter the city of
Grand Forks brought this action against the defendant, Paulsness,
alleging as its cause of action that defendant wrongfully ob-
structed De Mers avenue, at a point near the westerly end of the
bridge across the Red River of the North by placing upon  and
across the traveled portion of this street, "an obstruction consisting
of a certain water pipe, certain planks, and certain manure and neg-
ligently permitted such obstruction to remain in and upon said trav-
eled portion of said street from on or about November 26, 1904,
to January 1, 1905." The complaint further alleges the bringing of
the action by Allman in the circuit court of the United States and
the recovery by him of a judgment, including damages and costs,
amounting to $1,028.60, for damages sustained by him by reason
of defendant's negligence during the period the street was so
obstructed by him, which judgment was appealed to the United
State circuit court of appeals at an expense of the further sum of
$400, and by said court affirmed; that defendant was duly noti-
fied of the bringing of said action and that he might appear and
defend the same; and that the city would look to him for reim-
bursement in the event of a recovery by Allman; that the city had
paid the judgment recovered by Allman and by reason of the prem-
ises alleged now looks to the defendant, Paulsness, for reimburse-
ment, and asks that said defendant be held liable to the plaintiff
for the sum of money so expended.

This action, being the one in which this appeal is taken, came
on for trial before the district court of the First judicial district of
North Dakota on March 5, 1908, and, at the conclusion of the evi-
denced introduced by both parties showing facts substantially as
hereinbefore narrated, the plaintiff moved the court to instruct the
jury to return a verdict in its favor upon the ground that "the case
conclusively establishes the legal liability of the defendant." The
defendant also moved that the jury be directed to return a verdict
in his favor upon the ground (1) that the evidence failed to show
that a demand was made upon the defendant to defend the suit
brought by Allman, and a reasonable time allowed him by such
notice to prepare for and make such defense; and (2) that it
did not appear that under the facts shown, the structure placed

by defendant Paulsness upon the street was dangerous or out of repair or that there was any duty on the part of Paulsness to remove the obstruction which caused the injury. The court denied the motion of defendant and granted the motion of plaintiff and under its direction a verdict in plaintiff's favor was rendered by the jury.

Thereafter, in denying a motion for a new trial made by plaintiff upon the ground, among others, of the insufficiency of the evidence to justify the verdict, and that the verdict is against the law, the learned trial court filed a memoranda of its reasons, in which it is stated: "At the trial of the present action I followed the ruling of the Supreme Court of the United States in Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712, in directing a verdict for the plaintiff. It seems to me that the principles announced in the case just cited control the case at bar. * * * The very gist of the original cause of action was the structure or pipe guard which the defendant admits he constructed, but which was subsequently changed by some unknown person by adding the loose plank. It follows, therefore, that the judgment against the plaintiff obtained in the original action 'conclusively established a fact from which as the duty' to keep the pipe guard in the street safe rested on Paulsness, his 'negligence results.'" I cannot see that there is any difference in principle between the case at bar, where the original construction was safe and was rendered unsafe by adding something to it, to-wit: A loose plank, and the Washington Gas Light Company Case, where the original construction which was safe was rendered unsafe by removing something from it, to-wit: the cover of the gas box. If, instead of removing the cover and leaving the gas box open, in the case cited, a cap six or ten inches high had been attached to the box and Mrs. Parker had been injured by tripping over the cap, and recovered judgment against the District of Columbia for the injury, would the gas company have been any the less liable? Clearly not.

Appellant in this court urges as a ground for reversal of the judgment of the district court, that it was error to grant plaintiff's motion and to refuse to grant defendant's motion for a directed verdict, and that if a verdict should not have been directed for the defendant, then the disputed questions of fact with reference to his liability should have been submitted to the jury. A proper

determination of the points presented by this appeal requires that we should consider whether or not, upon the evidence introduced, the plaintiff has shown the necessary elements of a cause of action against Paulsness; and, if so, whether or not upon such showing, as a matter of law, the plaintiff is entitled to recover. The substance of all assignments upon this appeal may be said to be included in these points. It is well settled that a municipal corporation which under a liability resulting from a failure to keep safe its streets for the passage of persons and property, and to abate therefrom all nuisances and remove all obstructions that might prove dangerous, is required to pay damages to a person injured on the streets, has, unless it is also a wrongdoer, a remedy over against the party that is in fault and has so used the streets to produce an injury. Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed 712; City of Rochester v. Montgomery, 72 N. Y. 65; City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818, and Chicago v. Robbins, 67 U S. (2 Black) 418-429, 17 L. Ed. 298. Such right of action proceeds upon the principle that in the case of joint tortfeasors in which the parties are not equally culpable, the principal may be held responsible to his codelinquent for damages incurred by their joint offense. A party who for his own benefit or convenience or under license from a city is permitted to place upon a public street a structure which from its nature or from a failure to guard it, or keep it in repair is or may become dangerous, is held to be under an implied contract with the city that in so doing he will exercise ordinary care to protect the public from danger and the city from loss; so that, in case of injury to one using the street and consequent loss to the city resulting from such structure or the manner in which it is kept, the city may be regarded as in nominal fault only while the party who rendered the street unsafe will be held to be the real wrongdoer and an indemnitor of the city against loss. Chicago v. Robbins, supra; Village of Port Jervis v. Bank, 96 N. Y. 550.

The defendant, Paulsness, vigorously contends that the one-inch pipe was laid from the manhole to the side of the street and the two planks placed on either side of it not by him or under his direction but by the city whose superintendent of waterworks interfered at a time when his workmen were about to proceed to repair the pipe by another method which would not have caused

any obstruction whatever of the street; and that he was not responsible for any obstruction to or unsafe condition of the street caused thereby. In our view of the case, however, this point has no materiality. If it appeared that the injury to Allman and the consequent liability of the city had resulted directly from the laying of the pipe or the placing of the two planks beside it as a guard, this question would be one of controlling importance and on its determination would depend the liability of Paulsness. It appears, however, that the cause of the injury was neither the pipe nor the planks placed beside it as a guard, but a third plank which drifted there through some agency not accounted for and remained for several days without permanent attachment either to the pavement or the structure guarding the water pipe. In this state of fact, we believe that the point decisive of the case will be reached more speedily and determined more clearly by assuming in accordance with the contention of the plaintiff that whether or not the pipe was placed on the surface of the street and the two planks placed beside it as a guard by Paulsness or under his direction, he had by his acquiescense and subsequent conduct adopted both this method of conveying water beyond the break and the structure necessary to protect it and was liable for any damages which resulted from a failure to use ordinary care to keep such structure reasonably safe. We will also assume, without deciding, that the notice served by the city upon the defendant prior to the trial of the action brought by Allman was sufficient in substance and in time of service to enable him to prepare a defense to and to defend the action had he desired to do so.

On a state of facts such as is here assumed, the plaintiff contends, and the trial court seems to have held, that the judgment in favor of Allman conclusively established as a fact that it was the duty of Paulsness to keep safe the water pipe with the two planks guarding it upon the street, and that his failure to do so resulted in the injury to Allman and consequent loss to the city. So far as the duty of Paulsness is concerned, this contention will be regarded as correct, and if it can be truly said that the evidence taken in this case conclusively shows, or that the rendition of the judgment in Allman's favor necessarily included, a finding that the injury was caused by a failure to keep safe the water pipe laid in the street or the structure guarding it, there is little question but that Paulsness is liable as an indemnitor to the city. It appears,

however, from the evidence taken and from an express finding of the jury, on whose verdict the judgment was rendered, and in fact seems to be conceded on all hands, that the injury to Allman did not proceed from any danger inherent in the pipe or the planks guarding it or from any failure of Paulsness to properly maintain the structure or keep it in repair, but, as before stated, from a loose plank, not a part of the original structure, subsequently placed on the street without his knowledge or authority.

Appellant, if liable as an indemnitor of the city, and if given notice of an opportunity to defend against the judgment obtained by Allman, is concluded as to all matters necessary to establish a liability from the city to Allman and as to any matter which might have been urged as a defense by the city against such liability. City of Rochester v. Montgomery, supra. It cannot be said, however, that the liability of Paulsness is coextensive with that of the city. The city was liable for a failure to use ordinary care to keep its streets safe, whether the obstruction which rendered it dangerous was placed there by the city itself, by Paulsness, or by some other party. Paulsness was liable only in case the injury was produced by an obstruction which he had placed upon the street and failed to use reasonable care to keep in safe condition. Notwithstanding the payment by the city of a judgment resulting from the injury to Allman, and all legal conclusions arising out of the trial of the action brought by him, Paulsness was not "estopped from showing that he was under no obligation to keep the street in a safe condition and that it was not through his fault that the accident happened." City of Chicago v. Robbins, supra.

Any liability of Paulsness in this action, therefore, "is predicated upon the negligent character of the act which caused the injury and the general principle of law which makes a party responsible for the consequences of his own wrongful conduct." Village of Port Jervis v. Bank, 96 N. Y. 550. His relation to the city and his conduct with reference to the obstruction of the street which caused the injury will be measured by the rules of the law of negligence. Whether or not the proximate cause of the injury to Allman was a failure of defendant to perform a legal duty or arose through his fault, in this as in other cases charging negligence, is a question of law for the court, to be determined upon the material facts

with such inferences as may be properly drawn therefrom. Glassey v. St. Ry. Co., 185 Mass. 315, 70 N. E. 199.

Assuming, therefore, that Paulsness was responsible for placing the water pipe across the street and the two planks, one on either side, for the purpose of guarding it, did the placing of such obstruction or the failure on the part of Paulsness to exercise ordinary care to protect the public from damage, result directly and proximately in the injury to Allman? The trial court held that a liability of Paulsness follows when the fact is established that he constructed the original pipe guard upon the principle, evidently, that having created an obstruction in the street it was his duty to prevent or remove any additions thereto by persons known or unknown which rendered it unsafe. It is true that defendant, having placed the original structure in the street, would be held to exercise a certain supervision over it for the purpose of keeping it in safe condition; and if at the time he placed it there he had cause to reasonably anticipate that, from the nature of the structure itself or from the use for which it was intended in the ordinary course of human events, additions would be placed thereon which might render it unsafe and dangerous, this supervision must extend to such additions. But unless the additions to or changes in the original structure are such as a prudent man in the exercise of ordinary care may be held to have had in anticipation, he is not liable for a failure to discover or remove them. Glassey v. Street Ry. Co., supra; Kumba v. Gilham, 103 Wis. 312, 79 N. W. 325; Leeds v. Telephone Co., 178 N. Y. 118, 70 N. E. 219; Cuff v. Railway Co., 35 N. J. Law, 17, 10 Am. Rep. 205.

In our view, the facts under which the plaintiff here claims to hold Paulsness liable are quite different, in legal effect, from those announced in the case of Washington Gas Light Company v. District of Columbia, referred to in the memoranda of the district court. In that case the Gas Company who, for its own benefit and convenience, placed an iron box in the sidewalk, would be held to know that such a construction in the course of years, by ordinary usage, wear and deterioration from the elements, would probably lose its cover and through this or other substantial losses become dangerous. Knowing this it was held liable for failure to anticipate and to repair such loss. On the other hand, however, the Gas Company could not be said to have in reasonable anticipation at the time it placed the box there that some unauthorized person

would permanently attach to this cover an additional cap six or ten inches high as conjectured by the trial court, unless the original cap itself was constructed in such a way as to induce or invite such addition and to raise a reasonable expectation that it would be placed there.

The original structure placed by Paulsness was safe at all times before and after the injury to Allman. If one of the two planks guarding the pipe had in the course of time become loose so that it tipped or moved about in such manner as to cause the injury, it is clear that such condition might have been reasonably anticipated by Paulsness and that he would be liable. To hold, however, that in placing the original structure there he must have had reasonably in anticipation that it would be interfered with by some other person who would place manure on top of the planks and the pipe and a loose plank on top of the manure in such a position that pedestrians by stepping on ene end would raise the other so as to render it dangerous to persons using the street at the point, requires, as we view it, an unreasonable assumption that the facts of the case will not sustain.

Paulsness insists that the sole purpose of placing on the street the two planks permanently attached to the pavement was to guard the pipe from injury or displacement; that the structure so made did not contemplate the use of manure or of a third plank for carrying out the purposes for which it was intended; that the manure placed on top of the pipe and the loose plank placed on top of the manure did not in any manner protect the pipe and that the presence of these additions did not make the structure more safe but on the contrary presented in itself a dangerous obstruction for which he was in no way responsible. This contention, in the light of the entire evidence, seems well founded and reasonable. If the city placed the manure or loose plank there in carrying out some plan connected with the supervision of the streets, Paulsness would not be at liberty to remove it. If some third party placed it there he and not Paulsness would be responsible for any injury caused by its making the street unsafe. If, for instance, an electric light company in constructing or repairing its line along the street had placed some of its apparatus upon this structure laid there by Paulsness, and a person using the street had been injured by coming in contact with the apparatus, it is apparent at a glance that the electric light company and not Paulsness would have been liable

for the resulting damage. If a contractor engaged in the construction of a building near at hand, had piled bricks or other building material on the structure and Allman had fallen over this instead of the loose plank it is equally clear that the contractor and not Paulsness would be liable. And yet, on what theory can it be said that the placing of the manure and the third plank on the original structure could have been more naturally or directely in the contemplation of Paulsness than the laying there of electric apparatus or building material?

Assuming to exist, therefore, all facts necessary to establish a liability of the city of Grand Forks to Allman, we are of the opinion that these facts, together with the additional showing made upon the trial of this case, are insufficient to establish a liability against Paulsness. Neither the facts nor any reasonable inferences that can be drawn from them show that it was the duty of Paulsness to remove from the street the obstruction which caused the injury, or that he failed to keep in safe condition the structure placed there by him. In other words, a cause of action in negligence is not shown against Paulsness in that it does not appear that any breach of duty or lack of care on his part was the direct and proximate cause of the injury to Allman. Failing in this, the city fails to show that Paulsness was the real party in fault and cannot hold him as an indemnitor for the loss occasioned by payment of the judgment to Allman. The motion of defendant made at the close of the entire testimony that a verdict be directed in his favor should have been granted.

The judgment of the district court is reversed, and it is directed to dismiss the action. All concur, except MORGAN, C. J., who did not participate.

(123 N. W. 878.)

NOTE—As to liability of cities for defective streets and obstructions thereon, see note by Judge Cochrane to Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427. On sufficiency of presentation of claim to city council, see Coleman v. Fargo, 8 N. D. 69, 76 N. W. 1051. Sufficiency of notice to city council of claim for damage, is question of law for the court. Trost v. Casselton, 8 N. D. 534, 79 N. W. 1071. Such notice is mandatory. Id. Bicycles, in the absence of ordinance prohibiting it, may be lawfully ridden on sidewalk. Gagnier v. Fargo, 11 N. D. 73, 88 N. W. 1030. City is liable for injuries to a bicycle rider if sidewalk is not in a reasonably safe condition. Id. City's duty is fulfilled if sidewalk is in a reasonably safe condition for pedestrians. Id. Claimant for damages against city may present his claim to city auditor with the request that he present

it to the council. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 174. Notice of claim for damages against a city is sufficient where it describes locality of accident as 30 feet from a point, when in fact it is only 25 feet. Johnson v. Fargo, 15 N. D. 525, 108 N. W. 243. Whether a wire at certain distance from sidewalk, is an obstruction is a question for the jury. Id.